173 So. 881

**POLLARD v. ROGERS.**

5 Div. 243.

Supreme Court of Alabama.

April 15, 1937.

Jacob A. Walker, of Opelika, for appellant.

Duke & Duke, of Opelika, for appellee.

THOMAS, Justice.

This suit, brought by appellee, J. A. Rogers, against appellant, H. D. Pollard, as receiver of the Central of Georgia Railway Company, was for personal injuries and damages sustained as the result of plaintiff's automobile truck being "run against by a train * * * operated by the defendants."

The trial was had on the simple negligence counts, resulting in a judgment for the plaintiff.

Defendant's motion for a new trial was overruled, and from that ruling of the court this appeal is prosecuted, for error is assigned predicated thereon.

It is elementary that the general affirmative charge should not be given when there is conflict in the evidence. McMillan v. Aiken et al., 205 Ala. 35, 40, 88 So. 135. It is the rule that where the verdict is contrary to the great preponderance of the evidence, defendant, on due motion, is entitled to a new trial, though the court was not in error in declining the affirmative charge. The scintilla of evidence rule does not apply as to the ruling on the motion. Koonce et al. v. Craft (Ala.Sup.) 174 So. 478;[1] Commonwealth Life Ins. Co. v. Brandon, 232 Ala. 265, 167 So. 723; Alabama Midland Railway Company v. Johnson, 123 Ala. 197, 26 So. 160.

The evidence for the plaintiff shows the automobile was brought to a stop before entering upon the crossing of more than one, or parallel tracks, and that the open space between the tracks was small. Some

[1] Post, p. 278.

witnesses state that such space was not sufficient within which to stop the automobile with safety between such parallel tracks. The photographs in evidence present a question as to this fact for the decision of the jury. So, also, as to what is or is not contributory negligence as to entering upon and proceeding over several railroad tracks alongside and immediately adjacent is dependent upon the facts of each case, and all the attendant circumstances. There is no hard and fast rule to be observed as to procedure over a crossing after entering upon the first of several parallel or immediately adjacent tracks. Cunningham Hardware Co. v. Louisville & N. R. Co., 209 Ala. 327, 96 So. 358; Southern Ry. Co. v. Randle, 221 Ala. 435, 128 So. 894.

■■ The flagman's duty ends after the train has reached or stopped on the crossing, and he is not negligent in then leaving his post of duty, since the train itself is sufficient warning of its presence. Southern Ry. Co. et al. v. Lambert, 230 Ala. 162, 160 So. 262. In this respect the evidence is conflicting, and the refusal of defendant's general affirmative charge was without error.

■■ We come to a consideration of the action of the trial court in instructing the jury, to which instructions exceptions were reserved. Such exceptions will be considered as they are definitely or specifically reserved. Ex parte Cowart, 201 Ala. 55, 77 So. 349; Birmingham Ry., L. & P. Co. v. Jackson et al., 198 Ala. 378, 73 So. 627. In Bean v. Stephens, 208 Ala. 197, 94 So. 173, 175, the rule is thus stated, that "If exception is desired to be reserved to a part of the oral charge of the court to the jury, it must be taken and reserved to the particular language the exceptor conceives to be erroneous" and to be presented for review. The proper way to reserve an exception to a part of the court's oral charge is for the exceptor to select and recite what the court said, or state the substance of what the court said, and thus specifically bring to the attention of the trial court and this court the matter and ruling of which complaint is made. Kelley et al. v. State, 226 Ala. 80, 145 So. 816; J. C. Byram & Co. v. Livingston, 225 Ala. 442, 143 So. 461; Louisville & N. R. Co. v. Parker, 223 Ala. 626, 138 So. 231; Harris v. Wright, 225 Ala. 627, 144 So. 834; Sullivan v. Miller, 224 Ala. 395, 140 So. 606; Beech v. State, 205 Ala. 342, 87 So. 573; Birmingham Railway, Light & Power Co. v. Friedman, 187 Ala. 562, 65 So.

939; General Electric Company v. Town of Fort Deposit, 174 Ala. 179, 56 So. 802; Irvin v. State, 50 Ala. 181.

The first exception taken to the oral charge is not definite enough, under the requirements, to bring the same to the attention of the court and give opportunity for correction, if the court so desires. However, when the statement or instruction is considered with the whole charge given, and with reference to the pleading and evidence, there was no error committed. Louisville & N. R. Co. v. Crick, 217 Ala. 547, 117 So. 167; Lincoln Reserve Life Ins. Co. v. Armes, 215 Ala. 407, 110 So. 818.

■ The exception to the oral charge, "Then, under these circumstances, you are to determine whether or not the plaintiff was negligent and whether or not the defendant was negligent and which negligence caused the accident," was without error, when the context of the charge is considered. It did not assume or instruct the jury that plaintiff or defendant was negligent; that issue of the respective facts and the resultant injury and damages being left with the jury.

■ That portion of the oral charge to which exception was taken, viz., "* * * contributory negligence, that is, that the negligence that existed was the negligence of the plaintiff," must be taken in its context, and, when so considered, was without error.

The words, to which exception is reserved, and considered as a part of the instruction given, are: "Now, gentlemen, if you find that this accident and the resultant injury were caused by the negligence of this plaintiff in negligently operating his Ford truck, then he would not be entitled to recover and your duty would have been finished and you need not go any further. If however, you conclude that this damage and collision was caused by the negligence of the defendant, if would be necessary then for you to go further and determine what damages you in your sound judgment believe he is entitled to." In this instruction there was no error. The court had theretofore instructed the jury as now to be indicated. And when the oral charge is considered as a whole, as it must be, the defendant was given the benefit of his plea of contributory negligence, as the court instructed the jury, saying:

"Now, are you reasonably satisfied after hearing both sides of this case that the defendant was negligent there and that that negligence caused the accident and resultant damage? If so then the plaintiff would be entitled to the verdict. If, on the other hand, after considering all of the evidence, and considering the burden of proof, the rule for which I have given you, you conclude that this collision and the resultant damage was caused by the negligence of the plaintiff, then you would find for the defendant on his plea of contributory negligence."

■■■■ The law of such a case is stated in many decisions—it is "axiomatic * * * that the plaintiff ought not to recover in a negligence case, unless he proves the negligence alleged; and he cannot recover even then, if he himself or the defendant prove that his (plaintiff's) own negligence proximately contributed to that [negligence] of the defendant to produce the injury received, provided, however, this contributory negligence is specially pleaded." Stowers v. Dwight Mfg. Co., 202 Ala. 252, 254, 80 So. 90, 92; Britt v. Daniel, 230 Ala. 79, 159 So. 684; Carter v. Ne-Hi Bottling Co., 226 Ala. 324, 146 So. 821. The case should not be reversed on the oral instructions given, and to which exception was taken. At most, it was merely subject to explanation, if defendant had so requested in writing, in the opinion of the writer, concurred in by Mr. Justice Foster. The majority hold that reversible error was committed in instructing in oral charge as challenged in fourteenth assignment of error, and as set out above. In other respects, all the justices agree.

■■■■ The complaint was against the defendants, Central of Georgia Railway Company, a body corporate, and H. D. Pollard, as receiver of the Central of Georgia Railway Company, a corporation. The train is shown to have been operated at the time and place indicated in the pleading—on the tracks of defendant railway company in the hands of and by the receiver named. No more accurate averment is required to inform defendants of the charge and claim made, and the damages sought. Section 5720 of the Code of 1923 authorizes plaintiff, when suing several defendants, whether sued as partners or otherwise, to recover against one or more of said defendants, but renders him (plaintiff) liable to costs to those against whom he does not obtain judgment. And in Rich et al. v. Brewer, 205 Ala. 343, 344,

87 So. 323, it was declared that recovery may be had against one or more defendants jointly sued. See, also, Southern Ry. Co. v. Arnold, 162 Ala. 570, 50 So. 293; F. W. Woolworth Co., Inc. v. Erickson, 221 Ala. 5, 127 So. 534. This is not such a case where the agency in operation of the road causing the injury should be averred other than the relation which is stated in the complaint. Montgomery, State Superintendent of Banks v. Chemical Nat. Bank of New York, 209 Ala. 585, 96 So. 898; Pinkston v. Boykin, 130 Ala. 483, 30 So. 398. There was no error in overruling the demurrers to the complaint.

■■■■ There were several questions asked the witness Perdue and allowed in the answer over objection of defendant, in an effort to explain contradictory statements made by the witness immediately after injury to plaintiff, and which were at variance with the testimony of the witness Perdue given on the trial. In this connection this court has declared that a witness may testify as a shorthand rendition of fact. We cite some of our cases as illustrations: Sovereign Camp., W. O. W. v. Hoomes, 219 Ala. 560, 122 So. 686; Alabama Power Co. v. Edwards, 219 Ala. 162, 121 So. 543, wherein witness testified she was frightened; Roan v. State, 225 Ala. 428, 143 So. 454, in which witness was permitted to testify that "he got mad"; Jenkins v. State, 82 Ala. 25, 2 So. 150, defendant "appeared like he was mad"; Miller v. State, 107 Ala. 40, 19 So. 37, "appeared angry"; South & North Ala. Railroad Co. v. McLendon, 63 Ala. 266, where witness testified she "looked bad"; Batson et al. v. Batson et al., 217 Ala. 450, 117 So. 10, "bad health"; Fincher v. State, 211 Ala. 388, 100 So. 657, witness was permitted to testify that he knew from her looks there was something wrong; James v. State, 193 Ala. 55, 69 So. 569, Ann.Cas. 1918B, 119, "was intoxicated"; Carney v. State, 79 Ala. 14, "acted towards her as a lover"; Deloney v. State, 225 Ala. 65, 142 So. 432, seemed all right; Gadsden General Hospital v. Hamilton, 212 Ala. 531, 103 So. 553, 40 A.L.R. 294, and Hall v. State, 216 Ala. 336, 113 So. 64, where witnesses testified defendants "appeared to be afraid"; Gassenheimer et al. v. State, 52 Ala. 313, "looked excited." The true line of demarcation is where an inference, necessarily involving certain facts, may be stated without the facts, the inference being the equivalent of a specification of the facts. South & North Ala. Railroad

Co. v. McLendon; Carney v. State; Roan v. State; Sovereign Camp, W. O. W. v. Hoomes; Fincher v. State; Batson et al. v. Batson et al., supra; Woodward Iron Co. v. Spencer, 194 Ala. 285, 69 So. 902. In Inter-Ocean Casualty Co. v. Stallworth, 221 Ala. 71, 127 So. 850, the witness' testimony, that he did not purposely discharge the gun injuring him, held not inadmissible as being within the secret motive rule. See Whiddon v. Malone, 220 Ala. 220, 124 So. 516.

■ The rule that obtains in this, and many other jurisdictions, with authorities collected in support thereof, is stated in the note, 69 A.L.R. page 1168, as follows:

"Evidence of the existence or absence of the emotions of fear, anger, joy, excitement, nervousness, earnestness, anxiety, disgust, curiosity, surprise, embarrassment, sympathy, despondency, displeasure, satisfaction, and the like, has thus been admitted. The competency of such testimony is based on necessity. Since it is well-nigh impossible to describe another's appearance in such manner as to convey to a jury an accurate picture of the emotion manifested by him at a given time, the admission of such evidence is not open to the common objection to nontechnical opinion evidence, that the function of the jury is being usurped. In answer to the contention that one may not testify as to the state of mind or mental cognition of another, it is frequently said that one's appearance under the stress of an emotion, manifesting that emotion, is a fact; and to say that another appeared to be excited at a given time is not an opinion or conclusion, but is the statement of a fact, within the common knowledge of all persons of normal understanding."

There are decisions in this and other jurisdictions in which a witness has been permitted to testify as to his own mental state at a particular time, 22 C.J. page 610, § 704; Birmingham Railway & Electric Co. v. Jackson, 136 Ala. 279, 34 So. 994, where plaintiff testified he did not become aware that the car on the defendant's track was moving on him or towards him; followed in General Accident, Fire & Life Assur. Corporation, Ltd. v. Jordan, 230 Ala. 407, 161 So. 240, held competent when the motives of a party are material. Hill v. State, 156 Ala. 3, 5, 46 So. 864; Williams v. State, 123 Ala. 39, 26 So. 521; Linnehan v. State, 120 Ala. 293, 25 So. 6. In Electric Lighting Co. of Mobile v. Elder Bros., 115 Ala. 138, 21 So. 983, the inquiry was whether the work was completed to the satisfaction of a party, etc.: held competent for witness to state that satisfaction per the contract.

■ The prevailing rule to be applied to such inquiries has long since been announced by Judge Stone in South & North Ala. Railroad Co. v. McLendon (1879) 63 Ala. 266, 276, who said: "'The true line of distinction is this: an inference, *necessarily involving certain facts, may be stated without the facts,* the inference being an equivalent of a specification of the facts: * * * In other words, when the opinion is the mere short-hand rendering of the facts, then the opinion can be given, subject to cross-examination as to the facts on which it is based.'—Whar.Ev. § 510." (Italics supplied.)

This question was also considered by Judge Stone in Carney v. State (1885) 79 Ala. 14, 18, saying: "Facial expression and vocal intonation are so legible, as that brutes comprehend them; and yet human language has no terms by which they can be dissected, and explained in detail. The reasoning in such cases is a posteriori, and the major proposition is but the sum or resultant of every one's experience and observation."

In Raisler v. Springer, 38 Ala. 703, 705, 82 Am.Dec. 736, decided in 1863, Judge Walker observed that, "The manner in which an act is done—whether rude and offensive, or kind and pleasant—is a matter of fact, open to the observation of the senses, to which a witness may legally testify." See, also, Carroll v. State, 23 Ala. 28, 58 Am.Dec. 282.

Such are the rules by which the examination and the exceptions thereto of the witness Perdue are to be tested, together with the exceptions to the general uncommunicated motive and intention rule, now to be stated. Turner v. State, 224 Ala. 345, 140 So. 448.

The plaintiff called as a witness one J. A. Perdue, who testified to facts that supported the plaintiff's cause. On cross-examination witness admitted that previous to the trial, and immediately after the collision, he made a statement (under the unusual circumstances or conditions that prevailed as to himself), which contained tendencies inconsistent with the testimony given on direct examination. On his redirect examination witness was asked of his

companion (appellee) in the car at the time of the collision, and answered, as follows:

"Q. Was he (Rogers) in a dying condition? * * * A. It looked like he was.

"Q. Were you worried about his condition? * * * A. Yes.

"Q. Was your mind clear at the time you signed the paper? * * * A. No.

"Q. What was the condition of your mind? * * * A. I don't know. I was just kinder dazed. I didn't know what it was all about."

Exceptions were reserved and motions made to exclude these questions on the ground that the questions asked "witness to testify to his undisclosed mental operations."

The plaintiff, in propounding the questions, stated that the answers tended to shed light on his condition at the time he signed the paper inquired about. The paper was in evidence and contained a tendency of evidence contrary to what witness had testified.

The jury had the right to consider these statements of the witness with the other evidence, in the light of the unusual circumstances under which they were given, to ascertain the truth of the facts detailed, and to determine the material fact of whether or not the colliding box car was moving or standing when and where the impact with the automobile occurred. In these rulings, the trial court was correct.

▇▇▇▇ Conceding, without deciding, that under ordinary circumstances some of these rulings would have been forbidden by the general rule of evidence, which disallows a witness to testify to what his intent or undisclosed state of mind is, yet the rulings of the trial court were proper, under the shorthand rendition of fact rule as to the answers, "It looked like he was" dying; that his "mind was not clear at the time he signed the paper," "I was just kinder dazed. I didn't know what it was all about," and were *justified under the exception* to the general rule above referred to as to the undisclosed mental state or intent of the witness. The exception allows a witness, who on cross-examination admits making, or is shown to have made, a prior statement inconsistent with that testified on direct examination, to give his own undisclosed intent, motive, or other mental state, as an explanation for having made the prior inconsistent statement. This right is established and well fortified

by the ancient holdings of this and other courts which we will now examine.

In 1 Greenleaf on Evidence (15th Ed.) pp. 617, 618, § 467, the text is:

"After a witness has been cross-examined respecting a former statement made by him, the party who called him has a *right to re-examine* him to the same matter. The counsel has a right, upon such re-examination, to ask all questions which may be proper to draw forth an explanation of the sense and meaning of the expressions, used by the witness on cross-examination, if they be in themselves doubtful; and also of the motive by which the witness was induced to use those expressions; (Dole v. Wooldredge, 142 Mass. 184 [7 N.E. 832]) but he has no right to go further and to introduce matter new in itself, and not suited to the purpose of explaining witness." Jones Ev. (2d Ed.) § 872.

In Campbell v. State, 23 Ala. 44, 76, Mr. Chief Justice Chilton said:

"It is a well established rule of law, that where a witness has been cross-examined respecting his former statements with a view of impairing his credit, the counsel who called him has the right to re-examine him, so as to afford him an opportunity of explaining such statements (2 Russell on Cr. 937); and it is also said by the same authority, that he may be asked what induced him to give to the person or persons to whom he made the communication the account which he has stated in the cross-examination.—ib. 937; 2 Brod. & Bing. 297. These authorities show that there was no error in admitting the witness Stiff to make the explanation, as to the motive which influenced him in saying no more than he did about Campbell's confessions on the occasion inquired of in the cross-examination."

In the case of Lewis (a slave) v. State, 35 Ala. 380, Judge Stone declared that a witness having been questioned, on cross-examination, as to his testimony before the committing magistrate, and having admitted that he then made statements inconsistent with his testimony on the trial, may, on re-examination, state that such former testimony was induced by threats of personal violence on the part of an opposing witness. Skumro v. State, ante, p. 4, 170 So. 776.

It is well settled that the general rule would ordinarily render incompetent the

statement of a witness giving his uncommunicated motive or reason for the given act, subject, however, to the well-recognized exception thereto, that when a witness has admitted on cross-examination the use of certain expressions or statements tending to discredit his testimony, he may on redirect examination in response to proper questions state what induced him to make such expressions or statements, *although it is but an uncommunicated motive.* Turner v. State, 224 Ala. 345, 140 So. 448.

This is merely a restatement of the rule of the ancient law on the question, as stated in the excerpt from 1 Greenleaf on Evidence (15th Ed.) pp. 617, 618, § 467, and as announced by this court in Campbell v. State, supra, and in Johnson v. State, 102 Ala. 1, 20, 21, 16 So. 99, 105, the statement in the last-cited case being as follows:

"The witness, on his cross-examination by the state, conducted with the view of impeaching him, had, as we have seen, made an answer to the question, which, unexplained, tended to throw discredit on his evidence. To refuse to allow him, under such circumstances, to explain his motive in making the statement, would violate well-established rules. Mr. Greenleaf says: 'Common justice requires that, first calling his attention to the subject, he should have an opportunity to recollect the facts, and, if necessary, to correct the statements already given, as well as by a re-examination, to explain the nature, circumstances, meaning and design of what he is proved elsewhere to have said;' and, as the author says, he may be asked the motive by which he was induced to use such expressions. 1 Greenl.Ev. §§ 462, 467. And, touching the same principle, this court has heretofore held, that he may be asked what induced him to give to the person to whom he made the communication, the account of it which, on the cross-examination he admitted he gave. Campbell v. State, 23 Ala. [44], 76; Lewis v. Post, 1 Ala. [65], 69; 2 Russ.Crimes, 937. We must hold, therefore, that the court below erred in excluding this evidence."

To like effect are the holdings in Thomas v. State, 103 Ala. 18, 16 So. 4; Anderson v. State, 104 Ala. 83, 16 So. 108; Henry v. State, 107 Ala. 22, 19 So. 23; Postal Telegraph Cable Co. v. Hulsey, 115 Ala. 193, 22 So. 854; Linnehan v. State, 120 Ala. 293, 25 So. 6; Williams v. State, 123 Ala. 39, 26 So. 521; Lowman v. State, 167 Ala. 57, 52 So. 638; Kinsey v. State, 204 Ala. 180, 85 So. 519; Turner v. State, 224 Ala. 345, 140 So. 448; Orr v. State, 225 Ala. 642, 144 So. 867; Hays v. State, 225 Ala. 666, 145 So. 134. There was no error in the ruling on admission of testimony by J. A. Perdue.

There was no error in the ruling on evidence as to the witness W. L. Standridge. He stated the facts as to the physical condition of the impact, saying: "When I got there a corner of that freight car was in the front door or right against the driver of that truck; as to whether the driver of the truck was pinned down by the freight car, he was fastened down, and it was the corner of the freight car that was holding him there, and we couldn't get the man out on account of that; that was the difficulty; we couldn't move the car to get him out for a long time; that was because the truck was fastened; as to whether it was because the corner of that freight car was stuck in the door and the man pinned down, I don't know whether it was stuck in the door or the door stuck in it, the corner of the freight car was in the door of the truck; the truck had been bent all the way from the head right back to where it went under; as to whether the impact bent the whole car, I don't know what bent it but it went under that; the car was bent from the front back to the steering wheel; I didn't see any bent place on the other side; I was around on the other side trying to help get the man out, and I didn't notice any bent place on the other side. * * * I stayed there until he was extricated from the automobile. The train did not pull up. * * * 'I asked him to and he said he couldn't.'" The witness was then asked, with reference to the engineer: "Q. And now I will ask you the question: You were talking to the engineer and the engineer said he couldn't pull up the train. Did he give you any reason?" and the reply was, "I can't." That witness then stated that "the box car had the steering wheel fastened down. The automobile truck was standing on its four wheels."

In the instant case the reference in the evidence was to a *present condition,* and was not the recitation of a past fact or condition. In the case of Louisville & Nashville Railroad Co. v. Pearson, Adm'r, 97 Ala. 211, 12 So. 176, "the declarations of plaintiff's intestate made within five

minutes after receiving the fatal injuries, after he had called for help, in response to the inquiry, 'What in the world?' replied, 'The hand-hold let me down,'" held not admissible in evidence as part of the res gestæ; in Richmond & Danville Railroad Co. v. Hammond, 93 Ala. 181, 9 So. 577, declarations—that it was the carelessness of the foreman—in reply to a question as to "how it happened," were likewise held inadmissible as part of the res gestæ, or "as evidence on any other principle"; and in Alabama City, G. & A. Ry. Co. v. Heald et al., 178 Ala. 636, 59 So. 461, 464, testimony that "the motorman had no time to stop the car," etc., before striking intestate, was properly excluded as being mere recitations of past facts.

 Here, the injury and damages were impending, concurring, and continuing; the automobile and its occupant being so pinned down and attached to the car of the train that they could not be moved without further probable injury and damage. The conversation between the witness Standridge and the engineer illustrated the condition of the plaintiff and the two vehicles under and in which he was pinned down and could not be liberated by moving the train. The defendant's agent merely said that he could not pull the train off the automobile and its occupant. Travelers' Ins. Co. v. Whitman, 202 Ala. 388, 80 So. 470; Birmingham & A. Ry. Co. v. Campbell, 203 Ala. 296, 82 So. 546. The fact inquired about was contemporaneous with the injury, and competent evidence. Shipp et al. v. Davis, 25 Ala.App. 104, 141 So. 366; Illinois Central R. R. Co. v. Lowery, 184 Ala. 443, 63 So. 952, 49 L.R.A.(N.S.) 1149.

The witness Mitchell was asked: "If that box car had been moving and had run into that automobile while the box car was moving towards Birmingham and that sill step had been bent, in what direction would it have been bent." Plaintiff objected to this question, and the court, sustaining the objection, stated: "That is a matter of inference for the jury to draw." To this ruling of the court the defendant reserved an exception. An expert opinion was not required; the answer merely called for matter of ordinary observation by the witness, leaving to the jury to infer or draw from the facts detailed under the issues of the case. There was no error in this ruling.

The majority, composed of ANDERSON, C. J., and GARDNER, BOULDIN, BROWN and KNIGHT, JJ., are of the opinion that the case should be reversed because of erroneous instructions embodied in the oral charge of the court, which are in conflict with the well settled rule that although the defendant was guilty of negligence proximately causing the plaintiff's hurt and damage, yet if the plaintiff himself was guilty of negligence, and his negligence proximately contributed in any degree to such hurt and damage, he cannot recover. Several of the excerpts from the oral charge noted in the opinion, to which exceptions were reserved, are in conflict with this settled doctrine.

The writer and Mr. Justice FOSTER are of the opinion that the instructions at most called for explanatory charges on the part of the defendant.

All the Justices agree to the other rulings treated in the opinion, except as above indicated.

The judgment of the circuit court is reversed and the cause remanded for the reason stated above.

Reversed and remanded.

ANDERSON, C. J., and GARDNER, BOULDIN, BROWN, and KNIGHT, JJ., concur.

THOMAS and FOSTER, JJ., dissent on the point indicated.

